IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PRI, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-4157-NKL |
| ) | |
| KEVIN KEITH, et. al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion to Join the United States Department of Transportation as a Necessary Party Defendant under Rule 19 [Doc. # 14] and Plaintiff's Motion to Remand Counts I and II of Second Amended Petition Due to Lack of Subject Matter Jurisdiction [Doc. # 18]. For the following reasons, the Court denies both motions.

**I.    Background**

Plaintiff PRI, Inc. ("PRI"), an Illinois corporation, brings this three-count action against Defendant Kevin Keith, Director of the Missouri Department of Transportation ("MoDOT"); Defendant Lester Woods Jr., External Civil Rights Director for MoDOT's Disadvantaged Business Enterprise ("DBE") Program; Defendant Missouri Highways and Transportation Commission ("MHTC"), Defendant Grace Nichols, Chair of MHTC, and Defendant John Doe, a presently unknown superior of Defendant Lester Woods.

The United States Department of Transportation ("USDOT") has promulgated regulations concerning its DBE program, under which states institute their own DBE programs and gain USDOT's approval in order to receive federal highway funds. *See e.g.* Title 49 Subtitle A Part 26, pursuant to Congressional directives at 23 U.S.C. 324; 42 U.S.C. 2000d, *et seq*. To receive federal funds, the MHTC promulgated regulation, 7 C.S.R. 10, and developed a state DBE program to comply with Title 49 Code of Federal Regulations, Subtitle A, Part 26. PRI's complaint concerns its decertification in July 2010 from its status as a regular dealer of petroleum projects under the Missouri Department of Transportation's DBE program.

Prior to July 2010, Plaintiff PRI was certified under Missouri's program as a Disadvantaged Business Enterprise, certified as a "regular" petroleum dealer. That certification allowed prime contractors doing business with PRI to count PRI's work towards its own DBE goals at the rate of a "regular" dealer. On July 23, 2010, Defendant Woods sent a letter to PRI indicating that it was no longer qualified as a "regular" dealer. PRI alleges that MoDot did this without following its own regulations for changing the status of a DBE participant. As a result of PRI's decertification, PRI's contractors could no longer receive DBE credit and were subject to penalties if they did business with PRI. PRI alleges that these actions caused PRI to lose a substantial amount of business and long-term customers. [Doc. # 1-9 at 4].

PRI's Complaint asserts three causes of action against Defendants. Count I seeks a writ of mandamus to compel Defendants to follow the requirements of Missouri regulation,

2

7 C.S.R. 10-8.091. [Doc. # 1-9 at 9], before changing PRI's DBE status. Count II seeks declaratory relief that Defendants violated state regulations when it changed PRI's status and seeks damages against all Defendants. Count III seeks damages against the individual Defendants under 42 U.S.C. § 1983 for violating PRI's property interest without due process of law.

On or about October 20, 2010, PRI obtained a Preliminary Order of Mandamus in Cole County Circuit Court against Defendants. The Preliminary Order found that Defendants failed to comply with state regulations before altering PRI's DBE status. [Doc. # 20 at 2]. The court "restored Plaintiff's [status] as a regular dealer ... and ordered Defendants to give credit for Plaintiff's DBE work to those prime contractors purchasing material from Plaintiff for any MoDOT projects." *Id.* The Preliminary Order also listed the DBE regulations Defendants must follow if they wish to pursue further action against PRI. After obtaining the Preliminary Order, PRI filed its Second Amended Petition adding the Section 1983 federal claim. Defendants then removed the matter to the Court.

## II.     Discussion

### A.     Joinder

Defendants now seek to join USDOT as a necessary party under Rule 19 of the Federal Rules of Civil Procedure. Rule 19(a)(1) allows joinder of a party if "in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1). Subsection "(a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among the current parties.... The focus is on relief between the

3

parties and not on the speculative possibility of further litigation between a party and an absent person." *LLC Corp. v. Pension Benefit Guar. Corp.*, 703 F.2d 301, 305 (8th Cir. 1983). Rule 19(a)(2) requires the joinder of a party if the party claims an interest" relating to the subject of the action and is so situated that disposition in his absence could (I) as a practical matter, impair or impede the [party]'s ability to protect that interest or (ii) leave any of the current parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(2)(I), (ii).

Defendants focus their briefing on the argument that they risk inconsistent obligations if USDOT is not joined. [Doc. # 15 at 2]. Defendants claim that a decision in PRI's favor could subject Defendants to the risk of losing federal highway funding because the USDOT has indicated that PRI is not entitled to receive DBE credit as a "regular" dealer. [Doc. # 15 at 4]. Defendants state that they "should not have to wait until such time as the Court issues a decision on PRI's request to be counted as a regular dealer before joining USDOT." [Doc. # 15 at 4].

First, the issue before the Court is not whether PRI is entitled to be a "regular dealer" under Missouri's DBE program; the issue is whether Defendants failed to provide PRI a hearing required by state law. That claim does not raise any possibility that Defendants will be subject to inconsistent obligations - one requiring it to provide a hearing and another prohibiting a hearing. Second, to the extent PRI is seeking to have its status as a "regular dealer" reinstated until such a hearing is held, that has already occurred as a result of the state court's preliminary injunction. Defendants have not even alleged that this has affected

4

Missouri's access to federal funds and PRI has presented uncontested evidence that Missouri's federal funds are not in jeopardy, even if the PRI's status as a "regular dealer" is reinstated pending final resolution of its status pursuant to Missouri law. To the extent that Defendants are arguing that there is a possibility that as a result of a subsequent hearing PRI will be reinstated permanently as a "regular dealer" and thereafter the USDOT will penalize it for doing so, that is not the subject of this lawsuit and is too speculative to require the joinder of the United States. Third, Defendants have not specified a cause of action under which USDOT could be added to the lawsuit, as Section 1983 claims are not cognizable against the federal government. *See Vieux Carre Property Owners, Residents & Associates, Inc. v. Brown*, 875 F.2d 453, (5th Cir. 1989) ("it is implicit in Rule 19(a) itself that … before [a party] will be joined as a defendant the plaintiff must have a cause of action against it.). Therefore, since USDOT cannot be joined, the Court is required to consider the four factors under Fed. R. Civ. P. 19 (b) to decide whether to dismiss the lawsuit or deny the motion for joinder. Having considered those four factors, the Court concludes that the more equitable course is to deny the Defendants' Motion for Joinder, rather than to dismiss the lawsuit. Any possibility of Defendants incurring inconsistent obligations is at best speculative and a dismissal will preclude PRI from obtaining the relief it seeks. Defendants through discovery and testimony at trial will be able to present any relevant information concerning the federal government's involvement in the dispute, and complete relief between the parties can be achieved by a single lawsuit.

Thus for the above reasons, the Court denies Defendants' Motion to join USDOT as a party.

### B. Subject Matter Jurisdiction

PRI seeks to remand the state-law claims of Counts I and II back to state court, arguing that the Eleventh Amendment bars suit in federal court against a state or state officials and that the Court lacks jurisdiction to issue a writ of mandamus against state agency officials. Defendants counter that the state of Missouri explicitly waived its Eleventh Amendment protection and that supplemental jurisdiction statute of Section 1367 provides sufficient federal subject matter jurisdiction for Plaintiff's state law claims.

The Court finds that the Eleventh Amendment does not bar federal jurisdiction over this suit, as the State may waive its Eleventh Amendment protection by seeking removal to federal court. *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 616 (2002) ("The question before us is whether the State's act of removing a lawsuit from state court to federal court waives [Eleventh Amendment] immunity. We hold that it does."). The Court will thus turn to the issue of whether it has jurisdiction over Plaintiff's mandamus claim in Count I.

District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In any action in which the Court has original jurisdiction, it also has supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." *Id.* § 1367(a); *see also United Mine Workers*

*v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that a single case or controversy exists for purposes of § 1367 if the state and federal claims "derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding . . ."). However, the Court may decline to exercise supplemental jurisdiction over any state claim if (1) "the claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)--(4). Supplemental jurisdiction, or pendent jurisdiction as it was formerly known, is "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). It owes its existence to "considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.*

The Court has original jurisdiction over PRI's claim under 42 U.S.C. § 1983. *See* 28 U.S.C. §§ 1331, 1441(b). PRI's state law claims are within the supplemental jurisdiction of this Court, as the federal and state claims clearly form part of the same case or controversy, both involving the question of whether MoDOT violated the procedural requirements of Missouri regulations.[1] However, the Court can decline supplemental jurisdiction over

---

[1] The Court finds unpersuasive the cases cited by PRI to deny jurisdiction. For example, in *Hunter v. Underwood*, the Eighth Circuit ruled only that "[t]he APA does not grant federal courts jurisdiction to review actions of state or municipal agencies." 362 F.3d 468 (8th Cir.

7

Plaintiff's writ of mandate claim if any of the circumstances listed in Section 1367(c) are present. *See TMTB I, LLC v. City of Manchester, Mo*, 2007 WL 3146562, * 1 (E.D. Mo 2007) (finding that federal court had supplemental jurisdiction under Section 1367 over state law writ of mandamus and declaratory judgment claims but declining to exercise jurisdiction on the grounds that the state law claims predominated over the federal claims).

The parties in the present action did not devote significant time in their briefing to addressing whether the Court should decline under Section 1367(c) to exercise jurisdiction of the mandamus claim. PRI claims only that the "cause of action and requested remedy are uniquely geared toward resolution by a state court." [Doc. # 24 at 5]. Defendants, meanwhile, state only that they believe the federal 1983 claim to predominate because it involves monetary damages. [Doc. # 21 at 2].

Looking at the 1367 (c) factors, the Court finds that the outcome of all three claims in this case is heavily dependent on questions of federal law. A fair reading of PRI's complaint indicates that a large part of PRI's challenge involves Defendants' alleged failure to implement the procedural requirements found in 46 C.F.R. 26.87, which is incorporated into Missouri regulations. PRI devotes pages of its Complaint to discussing the substance of the federal requirements, as well as USDOT publications and directives, in an attempt to establish Defendants' violation of USDOT regulations. There is comparatively little space

---

2004). Here, Defendant is asserting jurisdiction under Section 1367, not the APA. The older cases cited by PRI appear inapposite as well, as they do not involve the Court's authority to hear mandamus claims under Section 1367(c). Several of the other cases cited by PRI involve federal courts' lack of power to order state courts and judicial officers to perform certain duties. *See e.g. Sully v. Lungren*, 842 F. Supp. 1230, 1232 (N.D. Cal. 1994).

spent to discussing any unique state-based requirements found in the Missouri regulation, 7 C.S.R. 10-8-091. Thus, in analyzing the mandamus claim, it does not appear that the Court will be forced to delve into nuances of Missouri law, weakening the federalism and comity claims that normally call for remand for state mandamus claims.[2] There are also practical reasons to maintain the entire action in federal court. Having parties litigate issues based on the same or similar facts in two different courts fails to promote judicial economy and risks the possibility of inconsistent results for Defendants in the event that the state and federal courts were to interpret the overlapping issues differently. Given the considerations above, the Court finds that its exercise of supplemental jurisdiction under Section 1367 is appropriate in this case.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendants' Motion to Join the United States Department of Transportation as a Necessary Party Defendant under Rule 19 [Doc.

---

[2] District courts have declined to exercise supplemental jurisdiction over mandamus claims upon determining that state courts were in a unique position to decide questions of state law. *See e.g. City Limits of N. Nev., Inc. v. Cnty. of Sacramento*, 2006 WL 2868950, at *3 (E.D. Cal. Oct. 6, 2006) ("Since Plaintiffs' state claim involves mandamus proceedings that are uniquely in the interest and domain of state courts, and the parties do not dispute that the Court may decline to exercise supplemental jurisdiction, Plaintiffs' state claim is dismissed under section 1367(c)(1)."

9

# 14] and Plaintiff's Motion to Remand Counts I and II of Second Amended Petition Due to Lack of Subject Matter Jurisdiction [Doc. # 18] are both DENIED.

                                                         s/ NANETTE K. LAUGHREY
                                                         NANETTE K. LAUGHREY
                                                         United States District Judge

Dated: December 21, 2011
Jefferson City, Missouri